# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN RONDINA | ) | 3:19-CV-01699 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD FEIGENBAUM | ) | |
| *Defendant*. | ) | JANUARY 25, 2021 |

## <u>MEMORANDUM OF DECISION</u>
### RE: DEFENDANT'S MOTION TO DISMISS, ECF NO. 22

Kari A. Dooley, United States District Judge:

This case arises out of the administration of various testamentary trusts established by Grantor Herman Abbott for the benefit of, at least initially, his two daughters. Plaintiff, Ryan Rondina ("Rondina"), the Grantor's grandson, claims an interest in two of the trusts set up for the benefit of his aunt, Ellen Taub ("Ellen"), and brings this action against the Trustee of those trusts, Defendant Richard Feigenbaum. Rondina's claims sound in both breach of contract and breach of fiduciary duty. Pending before the Court is the Defendant's motion to dismiss all claims against him pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court heard oral argument on July 14, 2020. For the reasons set forth below, the motion to dismiss is DENIED.

**Allegations, the Trust indentures and the Settlement Agreement**

Herman Abbott had two daughters, Nancy Abbott and Ellen Taub. (Compl. ¶ 12.) Ellen is married to Bruce Taub, and Plaintiff-Rondina, Nancy's son, is Herman's only grandchild. (Compl. ¶ 12, 13.) Herman died on April 1, 2007. (Compl. ¶ 9.)

Prior to his death, in June 1998, Herman created both the Herman Abbott Revocable Trust and the Herman Abbott Irrevocable Insurance Trust (the "ILIT Trust"). (Compl. ¶ 7.) Herman's death led to the creation of several sub-trusts. (Compl. ¶ 11.) Shares were allocated to Herman's

children, Nancy and Ellen. (Revocable Trust Indenture Art. III, ECF No. 24-1; Irrevocable Insurance Trust Indenture Art. II, ECF No. 24-2.) The sub-trusts flowing from the Herman Abbott Revocable Trust were further split into GST-Exempt and Non-Exempt Trusts. (Revocable Trust Indenture Art. III.) The result of which is that, following Herman's death, there were six sub-trusts: Nancy's GST-Exempt, Non-Exempt, and ILIT Trusts; and Ellen's GST-Exempt, Non-Exempt, and ILIT Trusts. Each of the relevant trust indentures make it clear that the assets held in all six of these sub-trusts could, upon certain contingencies occurring, pass to Rondina. The claims brought herein concern only Ellen's Non-Exempt and ILIT Trusts, the assets of which Rondina alleges will, at least in part, pass to him upon Ellen's death. (Compl. ¶ 22, 40.)

David Bailey served as independent trustee of these trusts from their creation until April 15, 2015, at which point Defendant-Feigenbaum became the independent trustee of Ellen's Non-Exempt Trust. (Compl. ¶ 12, 23; Feigenbaum Aff. ¶ 6.) Feigenbaum subsequently became the independent trustee of Ellen's ILIT Trust on December 22, 2017. (Feigenbaum Aff. ¶ 7.)

Prior to Feigenbaum's appointment, a dispute arose among Rondina, Nancy, and Ellen regarding purported misappropriation of trust funds by Ellen's husband Bruce. To resolve the dispute, Ellen, Nancy, Rondina and prior trustee Bailey entered into a confidential Settlement Agreement. (Compl. ¶ 14.) Among other provisions, the Settlement Agreement called for mutual releases by and between all parties to the Agreement, releasing the signatories from any liability resulting from claims then held by any other party. (Settlement Agreement § 16, ECF No. 28-1.) Bailey, in his capacity as Trustee, Ellen, Nancy and Rondina signed the agreement in September 2013.

Section 11 of the Settlement Agreement describes a "Distribution Policy" by which certain monies (defined by a formula contained in the Settlement Agreement) would be paid to Ellen on

a quarterly basis. This Distribution Policy arguably conflicts with the original trust indentures, which left the question of distributions of either principal or income to the absolute discretion of the independent trustee.[1]

Bailey and later Feigenbaum made payments under the Settlement Agreement and in accordance with the Distribution Policy until at least 2017. (Compl. ¶ 24.) Then, on May 31, 2018, Feigenbaum claimed to have terminated Ellen's Non-Exempt Trust and distributed all of the trust assets, an amount in excess of one million dollars, to Ellen. (Compl. ¶ 25–26.) Around this time, Feigenbaum also pledged the assets of Ellen's ILIT Trust as security for a line of credit. (Compl. ¶ 41–43.) As of December 31, 2018, the outstanding balance on the line of credit was $1,616,999.43, and the assets in Ellen's ILIT Trust had a value of $1,771,741.60. (Compl. ¶ 57–58.)

**Standard of Review**

In this action, Rondina alleges that Feigenbaum breached the Settlement Agreement (Counts I and III) by distributing the Non-Exempt Trust and by encumbering the ILIT Trust. He further alleges that the same conduct was a breach of Feigenbaum's fiduciary duty (Counts II and IV) to Rondina as a contingent beneficiary of these trusts. Feigenbaum now seeks to dismiss all claims. He first asserts that Rondina does not have standing to bring these claims. Alternatively, he asserts that the complaint fails to state a claim for which relief may be granted.

### Rule 12(b)(1)

Although the Article III standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed, courts evaluate Rule 12(b)(1) motions differently depending on when the motion is made and whether the motion

---

[1] Plaintiff claims these payments were a cap on Ellen's distributions while Defendant asserts (though unenforceable in any event) that Section 11 describes a minimum distribution scheme.

attacks the complaint facially or factually. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citations and quotations omitted). When the motion is made during the pleadings stage and relies only on the complaint and exhibits thereto, the plaintiff bears no evidentiary burden. *HealthPort Technologies, LLC*, 822 F.3d at 56 (citations omitted). The task of the district court is to determine whether the Complaint alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue. *HealthPort Technologies, LLC*, 822 F.3d at 56 (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (quotations and other citations omitted). If, however, the movant submits evidence beyond the pleadings, then the plaintiff must "come forward with some evidence of their own to controvert that presented by the defendant." *HealthPort Technologies, LLC*, 822 F.3d at 57 (citations omitted). Nevertheless, "the plaintiffs are entitled to rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.*

Here, no documents were attached to Rondina's complaint. When the parties briefed this motion to dismiss, Feigenbaum submitted the trust indentures with his motion and Rondina submitted the Settlement Agreement with his opposition. Because these documents are referenced in Rondina's complaint, the Court considers them as incorporated into or integral to the complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (noting that a complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint). The Court therefore treats this motion to dismiss as a facial challenge.

**Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

The Court looks to the pleadings to determine if the Court has jurisdiction to hear the claims and if the claims themselves are plausible. *See O & G Industries, Inc. v. Aon Risk Services Northeast, Inc.*, 922 F. Supp. 2d 257, 262 (D. Conn. 2013) (discussing the standard of review for motions under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)). As required, the Court addresses the 12(b)(1) challenge first. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.").

**A. Rondina's Standing**

A motion challenging a plaintiff's standing under Rule 12(b)(1) requires a federal court to ensure that the matter before the court fulfills Article III's case or controversy requirement by verifying that the parties are properly before the court. *See Sonterra Capital Master Fund, Ltd v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020). A plaintiff is properly before a federal court if the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Additionally, "[w]here . . . jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005). This requirement that a plaintiff have standing under both Article III and state law ensures that a federal court sitting in diversity does not exceed its limited jurisdiction. *See City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 76 (1941) (finding that, though technical seeming, jurisdictional requirements "must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts"); *accord Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).

**1. Applicable Law for State Law Standing Determination**

As a preliminary matter, the Court must decide which state law controls Rondina's *standing* to bring his state law claims. Feigenbaum asserts that the question of standing must be decided in accordance with New York law because the trust indentures contain a choice of law provision reflecting that the indentures are to be construed in accordance with New York law. And

the parties agree that New York law controls the *substantive* issues in this case, *i.e.* the breach of fiduciary duty claims and the breach of contract claims. However, this Court has an independent duty to ensure that the parties have standing and that the Court has jurisdiction over the case. *See* Fed. R. Civ. P. 12(h)(3); *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019) ("To reach the merits of a case, an Article III court must have jurisdiction.").

This Court, sitting in Connecticut, must apply Connecticut choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941). Choice of law rules in Connecticut generally depend on the nature of the plaintiff's claim. *Reclaimant Corp. v. Deutsch*, 211 A.3d 976, 982 (Conn. 2019). The issue of standing however, "is . . . governed by Connecticut law." *Ferri v. Powell-Ferri*, 165 A.3d 1137, 1143 (Conn. 2017) (applying Connecticut standing rules to a controversy over a disputed trust that contained a Massachusetts choice of law provision); *People's United Bank v. Kudej*, 39 A.3d 1139, 1144 (Conn. App. Ct. 2012) (applying Connecticut standing rules to a controversy over a contract containing a Massachusetts choice of law provision).[2] And in Connecticut, standing is established by showing that a party is authorized by statute to bring suit or is classically aggrieved. *See, e.g.*, *Wilcox v. Webster*, 982 A.2d 1053, 1060–1062 (Conn. 2009) (discussing standing in Connecticut courts). Classic aggrievement requires the party claiming standing to show that (1) the party has a "specific, personal and legal interest" in the case and (2) this specific interest has been "specially and injuriously affected." *Powell-Ferri*, 165 A.3d at 1144.[3]

---

[2] Feigenbaum's attempt to distinguish *Powell-Ferri* are unpersuasive. Although the marriage in *Powell-Ferri* gave the wife an interest in the trust by making the trust marital property under Connecticut law, *Powell-Ferri*, 165 A.3d at 1144–45, it was not the mechanism by which the wife's interest was created that determined whether she had standing. The question relevant to standing was whether the interest, once created, provided the plaintiff with a right to sue in Connecticut courts. *Powell-Ferri*, 165 A.3d. at 1145 (discussing the Restatement (Second) of Trusts § 200). Finally, and as described below, even if New York standing law applied, Rondina would still have standing.

[3] The Court notes that at least one district court has indicated that the requirements of both classical aggrievement and Article III standing are identical. *See Metal Management, Inc. v. Schiavone*, 514 F. Supp. 2d 227, 232 n.4 (D. Conn. 2007).

### 2. The Breach of Fiduciary Duty Claims

At the motion to dismiss stage, Rondina's standing to bring his fiduciary duty claims turns on whether Rondina has sufficiently alleged a contingent interest in Ellen's Non-Exempt and ILIT Trusts and whether that interest provides him standing to sue under Connecticut law and Article III.  *See HealthPort Technologies, LLC*, 822 F.3d at 56.

Rondina alleges that he has a contingent interest in Ellen's trusts because the assets in the trusts, if any, will be distributed to Rondina upon Ellen's death. (Compl. ¶¶ 34, 55.) Feigenbaum disputes this allegation, arguing that "[a]t best Plaintiff has a potential future interest subject to several contingencies," contingencies which may never come to pass. (Def.'s Mot. to Dismiss, 21.) But since Rondina's reading of the trust indentures does not appear to be clearly contrary to the indentures' express terms the Court accepts Rondina's allegation as true for the purpose of determining this motion to dismiss. *See Interworks Sys. Inc.*, 604 F.3d at 699.

Connecticut courts have relied on the Restatement (Third) of Trusts to find that contingent or discretionary beneficiaries of a trust have standing to sue a trustee. *See Johnson v. Bank of Am., N.A.*, No. X04HHDCV156066060S, 2016 WL 6128087, at \*5 (Conn. Super. Ct. Sept. 19, 2016); *see also Gaynor v. Payne*, 804 A.3d 170, 176 (Conn. 2002) ("contingent remaindermen . . . have the right to bring an action against the trustee for breach of trust").[4]  Rondina, who is alleged to be

---

[4] The same is true under New York law. Though dismissal was upheld for failure to state a claim, in *McSpedon v. Levine*, 72 N.Y.S.3d 97, 100 (N.Y. App. Div. 2018), a New York court held that contingent beneficiaries have standing to sue in a case much like this one. *Id.* (affirming standing for a contingent beneficiary of "Trust A" to sue professionals involved in the administration of "Trust B" where Trust B's asset's would merge into Trust A if Trust B's income beneficiary died without a child and both trusts were created by the plaintiff's maternal grandfather). *See also Marcus v. Quattrocchi*, No. 08 CV 09514(VB), 2014 WL 521340, at \*6 (S.D.N.Y. Feb. 4, 2014); *Matter of Estate of Morse*, 676 N.Y.S.2d 407, 409 (N.Y. Sur. Ct. 1998). Finally, courts applying New York law have looked to the Restatement (Third) of Trusts for support, *see Rajamin v. Deutsche Bank*, 757 F.3d 79, 88 (2d Cir. 2014), and Section 94, Comment (b) unequivocally states that "any person who holds a beneficial interest, present or future, vested or contingent" may sue to enforce the trust. The cases cited by Feigenbaum stand only for the proposition that an individual with but an incidental interest in a trust does not have standing to sue a trustee. *See In re Estate of McManus*, 407 N.Y.S.2d 180 (N.Y. App. Div. 1978) (no standing for third parties to challenge stock transfer from a trust for a sole beneficiary), *affirmed* 390 N.E.2d 773 (N.Y. 1979); *Cashman v. Petrie*, 201 N.E.2d 24 (N.Y. 1964) (no standing for beneficiaries

a contingent beneficiary of the trusts, therefore has standing to sue under Connecticut law. His contingent interest is "a legally cognizable property interest" that he is entitled to protect. *Gaynor*, 804 A.2d at 176. Moreover, Rondina's pleadings allege facts that are sufficient to show a colorable claim of injury. Feigenbaum's alleged termination of Ellen's Non-Exempt Trust and pledge of Ellen's ILIT Trust would specifically harm Rondina's interest in the trusts. *See Gaynor*, 804 A.2d at 176; *Jackson v. Drury*, 216 A.3d 768, 777 (Conn. App. Ct. 2019) ("Standing requires no more than a colorable claim of injury"). In other words, he is "classically aggrieved" as required for standing in Connecticut courts.

Rondina also has standing under Article III because a contingent interest in the trust principal and income is a concrete interest, the loss of which constitutes an injury in fact. *See Scanlan v. Eisenberg*, 669 F.3d 838, 842–44 (7th Cir. 2012). In *Scanlan*, the Seventh Circuit looked to Illinois state law to determine whether the beneficiary of a discretionary trust had an equitable right to sue the trustee, and the court, by looking to case law and the Restatement (Third) of Trusts, ultimately found that Article III standing existed. *Id.* at 844. That court noted that the plaintiff must suffer an injury to a legally protected interest to have standing in federal court, but the nature and extent of that interest depended the rights of the interest holder, as determined by applicable state law. *Id.* at 842 (citing *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir.1988); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005); *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir.2001)).

As discussed above, Connecticut state law provides standing for a contingent beneficiary of a trust to sue to protect his interest in the trust and it has long been the case that "state law can create interests that support standing in federal courts." *Cantrell*, 241 F.3d at 684. Rondina's state-

---

of one trust to sue the trustee of a second trust that held a controlling share of a mutually owned corporation); *Naversen v. Gaillard*, 831 N.Y.S.2d 258 (N.Y. App. Div. 2007) (no standing where individual was not a beneficiary of the trust).

law created contingent interest is legally concrete, and Feigenbaum's alleged actions represent an actual injury to that interest, giving rise to an injury in fact sufficient to support Article III standing. *See Scanlan*, 669 F.3d at 842–44.

### 3. Standing & The Breach of Contract Claims

Rondina, who was a party to the Settlement Agreement, alleges that he suffered harm when Feigenbaum, as trustee to both the Non-Exempt and ILIT Trusts, breached the Settlement Agreement by deviating from the Agreement's terms. Such an allegation is sufficient to establish Article III standing because "a party that alleges harm due to another's breach of contract has a justiciable controversy with the other party and that courts have jurisdiction to resolve the controversy." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020). Feigenbaum argues that the Settlement Agreement is void *ab initio* and therefore cannot be enforced, or, more to the point, be the basis of any claimed "injury in fact." But whatever defenses to contract formation that Feigenbaum may later present, those arguments go to the merits of the controversy and do not implicate this Court's jurisdiction. *See id.* (citing *Whitmore v. Arkansas*, 495 U.S. 490, 500 (1975) ("[C]ontractual standing," *i.e.* the right to enforce a contract, "is not a matter of constitutional standing.").

For the same reasons, Rondina also has standing under Connecticut law. Rondina demonstrates in his pleadings that he has been classically aggrieved: by being a party to the Settlement Agreement; by alleging facts showing that Feigenbaum, as trustee, breached that agreement; and by pleading that he has been injured by that breach. *See Chiulli v. Zola*, 905 A.2d 1236, 1241–43 (Conn. App. Ct. 2006).

**B. Sufficiency of Claims Under Fed. R. Civ. P. 12(b)(6)**

Motions to dismiss filed pursuant to Rule 12(b)(6) serve as a check against potential plaintiffs who seek to "unlock the doors of discovery" and subject a defendant to additional scrutiny without sufficient justification. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). Evaluating these motions is a context-specific task that requires the Court to draw on its judicial experience and common sense. *Id.* at 679. For the reasons set forth below, both judicial experience and common sense dictate that Feigenbaum's 12(b)(6) motions should be denied.

Preliminarily, the Court observes that each of Feigenbaum's arguments derives from the trust documents' language. Boiled down, he argues that Rondina cannot state a plausible claim for relief because the terms of the trust documents defeat each and every one of his claims. Feigenbaum specifically claims that because the independent trustee is given absolute discretion with respect to distribution of trust assets and because the Settlement Agreement did not (and could not) alter the terms of the trusts, the distribution of assets to Ellen is unassailable on any basis. In denying the motion to dismiss, the Court does not presage the outcome of these arguments at trial or by way of summary judgment. The Court decides only that the issues are premature for adjudication at this stage of the proceedings.

**1. Breach of Contract Claims**

Rondina has made out a sufficient breach of contract claim in Counts I and III of his complaint. Under New York law,[5] "the essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *A.E. Rosen Electrical Co., Inc. v. Plank, LLC*, 120 N.Y.S.3d 220, 220 (N.Y. App. Div.

---

[5] The Settlement Agreement contains a choice-of-law provision selecting New York law, and the parties do not dispute this provision's efficacy.

2020) (citations omitted). Rondina includes factual assertions in his complaint alleging that (1) Ryan Rondina, Nancy Abbott, Ellen Taub, and David Bailey, then the trustee of all the Abbott trusts, entered into a settlement agreement on September 23, 2013 (Compl. ¶ 14.); (2) Rondina met his performance requirement by releasing any previous claims against the trust;[6] (3) Feigenbaum, as trustee of the Revocable and ILIT Trusts, breached the Settlement Agreement by distributing all the funds from Ellen's Non-Exempt Trust and pledging as security for Ellen's debts all the funds in Ellen's ILIT Trust (Compl. ¶¶ 20–27, 41–47.); and (4) Rondina has been harmed by Feigenbaum's alleged breaches. (Compl. ¶¶ 28, 49.) These allegations are sufficient to state a plausible breach of contract claim.

As noted above, Feigenbaum advances two arguments regarding the breach of contract claims. First, Feigenbaum argues that because the underlying trust indentures cannot, by their own terms, be modified and those indentures give the trustee absolute discretion to dispose of the trusts' corpora, the Settlement Agreement is ineffectual. But this argument goes to the merits of the case. And as Rondina points out in his opposition, the trust documents have other provisions which give the trustee power to execute instruments, *i.e.* the Settlement Agreement, and to settle claims. The Court cannot decide how these various provisions interact under the as yet undeveloped facts of this case. *See Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

---

[6] Although not expressly raised by Feigenbaum, the Court observes that the complaint does not explicitly state that Rondina performed in accordance with the Settlement Agreement. This Court may dismiss a complaint *sua sponte* for failure to state a claim. *See, e.g.*, *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). But at oral argument, counsel for Rondina represented that Rondina had, among other things, released his previously held claims, allowed Ellen to select a financial advisor, agreed to the selection certain individuals as protectors, and agreed to a no disparagement clause. The Court therefore orders Rondina to file an amended complaint by February 8, 2021 addressing this pleading deficiency. Feigenbaum's answer shall be due February 22, 2021.

Feigenbaum's second argument is that the breach of contract claims fail because the Settlement Agreement is invalid for want of consideration on behalf of Rondina.[7] This argument appears to be premised on the "fact" that Rondina had no valid claims in the underlying dispute so he released nothing. But even "[t]he release of a doubtful claim, as to which there is a dispute in good faith, is a sufficient consideration for a promise." *Reichman v. Pretzfelder*, 151 N.Y.S. 898, 899 (N.Y. App. Term 1915). Feigenbaum also asserts that because Rondina is not implicated or mentioned in Section 11, it is a contract provision for which he personally did not bargain and therefore gave nothing. Again, these arguments go to the merits of his defenses. Therefore, the Court concludes that Rondina's complaint is "sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved as well as the material elements of each action or defense." *Atkinson v. Mobile Oil Corp.*, 614 N.Y.S.2d 36, 37 (1994) (quotations and citations omitted). Indeed, the complaint is quite clear as to the basis upon which Rondina asserts his breach of contract claims. (Compl. ¶¶ 18–29, 46–49).

### 2. Breach of Fiduciary Duty Claims

"In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *McSpedon v. Levine*, 72 N.Y.S.3d 97, 101 (N.Y. App. Div. 2018) (collecting cases). Where a trustee is given absolute discretion to make certain disbursements, the plaintiff must also show that the trustee "commit[ed] a breach of trust in bad faith or intentionally or with reckless indifference to the interests of the beneficiaries, or if he has personally profited

---

[7] This argument first appears in Feigenbaum's reply brief, and the Court is under no obligation to consider it. D. Conn. L. Civ. R. 7(d); *Known Litigation Holdings, LLC v. Navigators Ins. Co.*, No. 3:12cv269, 2016 WL 3566653, at *4 n.9 (D. Conn. June 24, 2016).

through a breach of trust." *See Matter of Mankin*, 930 N.Y.S.2d 79, 80 (N.Y. App. Div. 2011) (quoting *O'Hayer v. de St. Aubin*, 293 N.Y.S.2d 147, 151 (N.Y. App. Div. 1968)).

Counts II and IV contain factual allegations sufficient to meet these pleading requirements.[8] Rondina alleges that Feigenbaum was, at the time the fiduciary duty was breached, the trustee of both Ellen's Revocable and ILIT Trust. (Compl. ¶ 3.) Rondina also alleges that Feigenbaum engaged in misconduct and violated his fiduciary duty by making distributions in excess of those allowed by the Settlement Agreement and by pledging the assets of Ellen's ILIT Trust as security for Ellen's debts. (Compl. ¶¶ 25–28, 65–67.) Rondina has further alleged that Feigenbaum violated Articles X and XI, which are spendthrift clauses, of the ILIT Trust by pledging the assets of that trust as security for Ellen's debts.[9] (Compl. ¶¶ 61–64.) Rondina also claims that he was harmed by Feigenbaum's actions. (Compl. ¶¶ 34–36, 69–71.)

Finally, Rondina also complains that Feigenbaum engaged in this behavior in bad faith or with a reckless indifference to Rondina's interests. (Compl. ¶ 35.) This assertion is supported by allegations that Feigenbaum knew about the Settlement Agreement, acted for a time in accordance with the Settlement Agreement, knew that the Settlement Agreement was intended to preserve assets for Rondina, and then acted to transfer the trusts' assets to Ellen anyway. (Compl. ¶¶ 24, 33–34.) These allegations, along with all possible inferences drawn in Rondina's favor, are enough to make Rondina's claims that Feigenbaum breached his fiduciary duty plausible even if the trust instruments give the trustee absolute discretion to distribute trust funds. *See Interworks Sys. Inc.*, 604 F.3d at 699.

---

[8] The Court notes that whether the trustee's absolute discretion was limited by the Settlement Agreement is a factual issue in dispute, which, depending on the outcome of that dispute, may impact the Plaintiff's ultimate burden. But because the Complaint satisfies the pleading requirements of the breach of fiduciary duty claim even under the heightened pleading requirement, the issue is left to another day.

[9] Feigenbaum does not contest this allegation in his motion to dismiss. Count IV would therefore survive this motion to dismiss even if Rondina had inadequately pleaded Count II.

Nonetheless, Feigenbaum argues that Rondina cannot state a breach of fiduciary duty claim because the Settlement Agreement is void *ab initio* and could not, as a matter of law, alter the trustee's absolute discretion. Therefore, his distributions to Ellen were completely within his discretion and cannot be a basis of a breach of fiduciary duty claim. Again, Feigenbaum's arguments go to the merits of his defenses in this action. Whether and to what extent the Settlement Agreement could (or did) alter the scope of the trustee's absolute discretion cannot be decided on the current record. And nor can the allegations that Feigenbaum acted in bad faith or with a reckless indifference to Rondina's interests be resolved at this stage of the proceedings. *See Mankin*, 370 N.Y.S.2d at 80–81.[10]

### Conclusion

For the forgoing reasons, Feigenbaum's Motion to Dismiss, ECF No. 22, is DENIED. Rondina is ordered to file an amended complaint by February 8, 2021. Feigenbaum's answer shall be due February 22, 2021.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of January 2021.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[10] Feigenbaum also asserts that Section 11 of the Settlement Agreement, the "Distribution Policy," sets a minimum that must be distributed to Ellen on a quarterly basis and does not set a cap on any such distributions. The Court declines to consider this argument, in connection with either the fiduciary duty claims or the contract claims. because it was raised for the first time in Defendant's reply brief. *See* D. Conn. L. Civ. R. 7(d); *Known Litigation Holdings, LLC*, 2016 WL 3566653, at *4 n.9.